# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY JOHNSON,

    Plaintiff,

v.

CITY OF PHILADELPHIA, et al.,

    Defendants.

Civil No. 07-3110 (RBK)

**OPINION**

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motions of Plaintiff Anthony Johnson ("Plaintiff") for (1) default judgment; (2) summary judgment; and (3) re-issuance of service of process upon Defendant Police Officer L. Rhodes, as well as upon the separate motions to dismiss for lack of jurisdiction and for failure to state a claim by the following groups of Defendants: (1) the Pennsylvania State Troopers; (2) the Honorable J. William Ditter, the Honorable Edmund Ludwig, the Honorable Diane Welsh, the United States District Court, and the United States Court of Appeals; (3) the City of Philadelphia; (4) the Honorable Joseph I. Papalini, the Honorable Marvin L. Halbert, and the Honorable Francis Biunno; (5) former Philadelphia District Attorney Lynne Abraham and Assistant District Attorney Michelle Seidner; (6) Plaintiff's criminal defense attorneys, Bruce G. Cassidy and Catherine M. McAllister; (7) Plaintiff's criminal appellate counsel, A. Charles Peruto, Jr.; and (8) Plaintiff's criminal appellate and/or post conviction relief counsel, Elayne C. Bryn (collectively, "Defendants"). The

Complaint alleges a grand conspiracy by Defendants to deny Plaintiff various rights secured by the Constitution. For the reasons expressed below, the Court will grant all of the Defendants' motions to dismiss with prejudice, dismiss Defendants Clarence Newcomer and William Hall, and deny all of Plaintiffs' motions.

I.  BACKGROUND[1]

Plaintiff was convicted of rape and other charges on November 6, 1986 in the Philadelphia Court of Common Pleas. Plaintiff alleges that "the conviction was the result of prosecutorial misconduct and [j]udicial misconduct committed by Michelle Seidner and Francis A. Buinno[], and the defense lawyers during trial Bruce G. Cassidy (who was not present) and Katherine McAllister . . . ." (Compl. at 3.) Plaintiff alleges that the presiding judge allowed the prosecutor to commit forgery and perjury and to violate certain unspecified procedural rules.

The Complaint further alleges, without providing exact dates, that years later a direct appeal was filed and state post conviction relief was sought. In this regard, the Complaint alleges that Plaintiff's appellate counsel conspired against him and refused to call witnesses and present favorable evidence. The Complaint further alleges, without providing exact dates, that Plaintiff sued Defendant Peruto in state court before Defendant Halbert, who "applied discrimination during the jury selection process resulting in a[] 99% white jury and Judge Halbert was subsequently exposed for man[i]pulating jury trials and removed (force[ed] into early retirement) a ploy used by fellow [j]udges to av[oi]d publicity of [j]udicial corruption!)." (Id. at 4.)

The Complaint further alleges that Plaintiff subsequently, again without providing specific dates, entered the federal forum where federal judges "continued the sabotaging of

---

[1] The facts in this section are drawn from the allegations in Plaintiff's Complaint.

2

Plaintiff's procedural due process[] rights in order to protect the [named Defendants] from their illegal acts. . . ." (Id. at 4-5.) The Complaint further alleges that, on April 15, 1993, United States Magistrate Judge William F. Hall, held a "mock evidentiary hearing" where Defendant Cassidy committed perjury, which Defendant Hall and Defendant Polllak allegedly covered-up because the truth was unfavorable to their fellows. (Id.) The Complaint further alleges that Defendants Welsh and Ludwig continued to cover-up for Defendant Pollak and Hall after Defendant Pollak "withdrew from the case because of Plaintiff's constant attack of his subornation to perjury." (Id. at 5.) The Complaint also alleges that the Defendant Third Circuit Court of Appeals "approved and adopted the subornation to perjury by its fellow officers." (Id.)

The Complaint further alleges that, on October 29, 1996, "after ten years of an illegal incarceration and never-ending legal battles, Plaintiff was released from prison." (Id. at 6.) The Complaint further alleges that the prison staff and Defendant Pennsylvania State Troopers conspired with other Defendants by applying Pennsylvania's Megan's Law, 42 Pa. Con. Stat. Ann. § 9791, et seq., to Plaintiff, despite the fact that the law was not in existence at the time Plaintiff was sentenced. Moreover, the Complaint alleges that "[s]ubsequently, [D]efendant Police Officer Rhodes and the District Attorney's Office and the Pennsylvania State Troopers began to harass Plaintiff with various provisions of the Megan's Law statutes . . . and their latest threats were made on [J]une 15, 2007." (Id.)

The Complaint further alleges, without alleging specific dates, that sometime between Plaintiff's conviction and his release from prison, he filed various civil rights actions against a number of the instant Defendants. The Complaint alleges that these actions were corrupted by a number of the named judge defendants, including Judges Ditter and Newcomer, who allegedly

3

dismissed Plaintiff's civil rights actions on various grounds including the statute of limitations, in an alleged effort to deprive Plaintiff of his right to a jury trial.

The Complaint further alleges, without providing specific dates, that sometime between Plaintiff's conviction and the actions allegedly taken by the aforementioned judges, the District Attorney's office was permitted to manipulate the jury selection process against African-American defendants. The Complaint further alleges that during this time this racsist tactic was taught to Assistant District Attorneys, and that the United States District Court, the Third Circuit, and other Defendants were aware of this practice but allowed it to continue.

Invoking 42 U.S.C. §§ 1983, 1985, 2000a, and 2000d, the Complaint articulates violations of Plaintiff's First, Fifth, Sixth, Eight, Thirteenth, and Fourteenth Amendment rights as well as violations of the Bill of Attainder and Ex Post Facto Clause and the Double Jeopardy Clause. The Complaint also alleges the violations of rights held by other "minority Americans." The Complaint seeks several specific declarations, the upshot of which is that the named Defendants engaged in a twenty-year conspiracy to deny Plaintiff and other African-Americans their constitutional rights. The Complaint also seeks an injunction restraining Defendants from exercising jurisdiction over Plaintiff or any African American pending the outcome of this action, and restraining Defendant Officer Rhodes and another individual from applying the Megan's Law statute to Plaintiff or from having any contact with Plaintiff whatsoever. Finally, the Complaint seeks compensatory damages in the amount of $20,000,000.

## II.   STANDARDS

### A.   Motion to Dismiss for Lack of Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a

complaint may be dismissed for lack of subject matter jurisdiction. Fed R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In the second type of Rule 12(b)(1) motion, the court does not presume that the allegations in the plaintiff's complaint are true, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. In such a case, "the court can consider affidavits attached to the moving papers or even require such affidavits to be submitted." New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. Jan. 13, 2000) (citing Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1281 n.4 (3d Cir. 1993)). Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction. Mortensen, 549 F.2d at 891. If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice. In re Orthopedic "Bone Screw" Prod. Liab. Litig., 132 F.3d 152, 155-56 (3d Cir. 1997).

### B. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

5

relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

## III. DISCUSSION

All of Defendants' motions to dismiss shall be granted because the allegations are either clearly time-barred or are simply not cognizable. The Defendants upon whose behalf a suggestion of death has been filed will be dismissed. Finally, Plaintiffs' motions for default judgment, summary judgment, and to re-issue a summons shall be denied as moot.

### A. Defendants' Motions to Dismiss

Defendants in this case have filed eight separate motions to dismiss on a variety of legal grounds.[2] The vast majority of the allegations in the Complaint occurred in the eighties and

---

[2] The legal bases for dismissal advocated by the various groups of defendants in this case include, inter alia: (1) absolute immunity; (2) sovereign immunity; (3) the Heck doctrine; (4) the Rooker Feldman doctrine; (5) res judicata; and (6) frivolity. Because the Court is satisfied that Plaintiff's claims are clearly barred by operation of the statute of limitations and applicable precedent, it declines to waste precious judicial resources explaining to Plaintiff why his claims would fail under many of the aforementioned theories. Should Plaintiff wish to sate his curiosity in this regard, the Court respectfully refers him to the numerous well-written briefs filed on

nineties. In fact, the only allegation of injury that is alleged to have occurred after Plaintiff's 1996 release from prison is the continued harm Plaintiff experiences as a consequence of Megan's Law, which is alleged to have specifically occurred as late as June 15, 2007. As discussed below, the vast majority of Plaintiff's claims are therefore clearly time-barred. Moreover, the only claim that is not clearly time-barred – injury sustained by application of Pennsylvania's Megan's Law – fails to state a cognizable claim for relief. As a consequence, the Court will dismiss the Complaint with prejudice.

The limitations period for Plaintiff's § 1983, 1985, 2000a, 2000e, and Bivens claims is ascertained by borrowing the statute of limitations existing in the forum state for personal injury actions. See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1087 (3d Cir. 1988); Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d Cir. 1985); Johnstone v. United States, 980 F. Supp. 148, 153 (E.D. Pa. 1997). The Pennsylvania statute of limitations for personal injury actions is two-years. 42 Pa. Cons. Stat. Ann. § 5524; see Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000). Therefore, the applicable statute of limitations for Plaintiff's claims is two years. See McGovern v. City of Philadelphia, 554 F.3d 114, 115 n.2 (3d Cir. 2009); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79-80 (3d Cir. 1989).

For civil rights claims, the clock begins to tick from the time when the plaintiff "knows or has reason to know of the injury" which forms the basis of the plaintiff's action. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Nonetheless, Pennsylvania tolls the limitations period pursuant to the discovery rule, which "tolls the period during the time that a plaintiff could not have known, in the exercise of reasonable diligence, about the existence of his

behalf of Defendants in this matter.

7

injury." Howard v. Mendez, 304 F. Supp. 2d 632, 635 (M.D. Pa. 2004). Moreover, a plaintiff in Pennsylvania may also invoke equitable estoppel if the defendants have committed fraud or concealment causing the plaintiff to be less than appropriately vigilante. Id. (citing Lake v. Arnold, 232 F.3d 360, 367 (3d Cir. 2000); Molineux v. Reed, 532 A.2d 792, 794 (1987)). Finally, Pennsylvania tolls the limitations period by statute in a variety of circumstances none of which are relevant here. See 42 Pa. Cons. Stat. Ann. §§ 5532-5535.

The majority of Plaintiffs' claims are clearly time-barred. The original illegality alleged occurred at Plaintiff's criminal rape trial in 1986. Much of the subsequent illegality alleged relates to an alleged cover-up of this initial illegality or to an alleged cover-up of the cover-up (and so on). Of course, in the process of these cover-ups, some Defendants are alleged to have committed independent constitutional violations in furtherance of the alleged conspiracy. In any event, the vast majority of the allegedly unlawful conduct is alleged to have occurred antecedent to or shortly after Plaintiff's release from prison in October 29, 1996. Giving Plaintiff every benefit of the doubt, the instant action was not initiated until July 30, 2007 when he filed an affidavit in support of a request to proceed in forma pauperis.[3] Therefore, the vast majority of the complained of conduct is over a decade old.[4]

Plaintiff does not allege any facts that would potentially toll the statute. For example,

---

[3] Plaintiff's Complaint was not filed until December 23, 2009.

[4] The fact that the Complaint does not allege specific dates for each of the allegedly unlawful acts does not prevent dismissal because the Complaint makes clear that the relevant conduct complained of occurred before Plaintiff's release from prison in 1996. See Young v. City of Allentown, 882 F. Supp. 1490, 1493 (E.D. Pa. 1995) (A statute of limitations defense can be considered on a motion to dismiss where the complaint facially shows noncompliance with the limitations period and the affirmative defense appears on the face of the pleading).

8

Plaintiff does not allege that he did not know of the alleged unlawfulness at the time it occurred. In fact, the Complaint clearly demonstrates Plaintiff's awareness of the allegedly unlawful activity (forgery, perjury, racist jury selection, etc.) as well as Plaintiff's awareness of the alleged cover-ups. Similarly, Plaintiff does not allege any fraud or concealment that could or did lull him into complacency. Pennsylvania does not extend the time period on the basis of imprisonment, 42 Pa. C.S.A. § 5533, and it would not matter if it did. At bottom, Plaintiff has been aware of all of the allegedly unlawful conduct for over a decade, and such awareness does not toll the statute.

Nonetheless, Plaintiff argues that the statute of limitations does not foreclose his claims because he has alleged a grand conspiracy and that therefore the statute should run from the last overt act alleged – the harassment Plaintiff allegedly suffers at the hands of the Trooper and District Attorney Defendants by way of Megan's Law's ongoing registration requirements. In the Third Circuit, the statute begins to run on a civil conspiracy from each overt act – not, as is the rule in criminal conspiracy cases, from the last overt act of the conspiracy. Wells v. Rockefeller, 728 F.2d 209, 217 (3d Cir. 1984); Hilton v. Whitman, 04-6420, 2008 WL 5272190, at *11 (D.N.J. 2008). This rule reflects the notion that, in a civil case, the focus is on the actual injury, not the unlawful agreement per se. Wells, 728 F.2d at 217. Therefore, the mere fact that Plaintiff has alleged a conspiracy does not breathe fresh life into his otherwise stale claims.

The Court is therefore left with Plaintiff's allegations that the Trooper and District Attorney Defendants are violating the Bill of Attainder and Ex Poste Facto Clause as well as the Double Jeopardy Clause by requiring Plaintiff to conform to the strictures of Pennsylvania's

Megan's Law.[5] Amongst other things, Pennsylvania's Megan's law subjects persons convicted of certain sexually oriented crimes to lifetime reporting and registration requirements with the Pennsylvania State Police. 42 Pa. Cons. Stat. Ann. § 9795.1. It also requires the police to maintain a registry of offenders and sexually violent predators. 42 Pa. Cons. Stat. Ann. § 9799.1. The Complaint's Megan's Law allegations do not state a cognizable claim, however, because the lifetime registration and notification obligations imposed on sexually violent predators by Pennsylvania's Megan's Law are not considered punitive and therefore do not violate the Bill of Attainder and Ex Poste Facto Clause or the Double Jeopardy Clause. Commonwealth v. Lee, 935 A.2d 865, 886 (Pa. 2007); see Smith v. Doe, 538 U.S. 84, 106 (2003); E.B. v. Verniero, 119 F.3d 1077, 1111 (3d Cir. 1997); Artway v. Attorney General of State of N.J., 82 F.3d 1235 (3d Cir. 1996). Thus, the remaining claims of the Complaint will be dismissed with prejudice.[6]

The Court is required to consider whether leave to amend is appropriate in civil rights cases. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986). Generally speaking, leave to amend is appropriate unless the court finds bad faith, undue delay, prejudice, or futility. Grayson v. Mayview State Hosp., 293 F.3d 103, 110-11 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000). Leave to amend in this case would be futile because the

---

[5] As noted above, any allegation arising from Megan's Law related injuries suffered upon initial registration and before August of 2005 are time-barred.

[6] The Complaint appears to articulate claims based on the alleged violation of common law torts. (See Compl. at 1.) These claims are nowhere described or explained. To the extent that the Complaint purports to bring these claims, the Court notes that an identical statute of limitations analysis would apply. See Pa. Cons. Stat. Ann. § 5524 (tort claims subject to two-year statute of limitations).

complained of conduct occurred so long ago and the ongoing registration requirements of Pennsylvania's Megan's Law are not punitive. Given the history of this dispute, which is littered with unsuccessful and patently frivolous attempts by Plaintiff to impose civil liability on these Defendants for their part in his dealings with the justice system, granting leave to amend would also be highly prejudicial. Accordingly, leave to amend will be denied.

### B. The Deceased Defendants

On April 9, 2010, a suggestion of death was filed pursuant to Federal Rule of Civil Procedure 25(a), respectfully noting the death of Defendants Clarence Newcomer and William Hall and noting that such death occurred before Plaintiff filed the instant case. A deceased person "cannot be a party to an action, and any such attempted proceeding is completely void and of no effect. Moreover, because a dead person cannot be a party to an action commenced after his death, substitution of a personal representative of the dead person's estate is improper." Darmanchev v. Roytshteyn, 234 F.R.D. 78, 79 (E.D. Pa. 2005) (citing Montanya v. McGonegal, 757 A.2d 947, 950 (Pa. Super. Ct. 2000)). Accordingly, Defendants Newcomer and Hall will be dismissed with prejudice.

### C. Plaintiffs' Motions

In light of his in forma pauperis status, Plaintiff has moved for the re-issuance of service of process upon Defendant Officer L. Rhodes. Officer Rhodes is a Philadelphia Police Officer who sent a letter to Plaintiff on July 25, 2003 informing Plaintiff that he was required to register with the State Police. Plaintiff has also moved for default judgment as to the City of Philadelphia on the basis that the City of Philadelphia has failed to respond to the Complaint.[7] Plaintiff has

---

[7] The City of Philadelphia moved to dismiss the Complaint on April 28, 2010.

also moved for summary judgment on this basis as well as on the basis that Defendants have filed frivolous motions to dismiss. Because the Court has concluded that Plaintiff's Megan's Law claims against Officer Rhodes are not cognizable, because the City of Philadelphia has responded to the Complaint, because the Court disagrees that Defendants' motions were frivolous, and because the Court will dismiss the Complaint in its entirety with prejudice, Plaintiff's several motions are misguided and moot. Consequently, these motions will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant all of the Defendants' motions to dismiss with prejudice, dismiss Defendants Clarence Newcomer and William Hall, and deny all of Plaintiffs' motions. The case will be administratively closed. An appropriate Order shall enter.


Dated: September 10, 2010                     s/Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge